**The TIMKEN COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant,**

**Marsuda–Rodgers International, Magyar Gordulocsapagy Muvek, Defendants–Intervenors.**

Court No. 90–06–00307.

United States Court of International Trade.

March 12, 1992.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Charles A. St. Charles, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice and, A. David Lafer; Robert J. Heilferty, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, Washington, D.C., for defendant.

Stein Shostak Shostak & O'Hara, Robert Glenn White, Los Angeles, Cal., for defendant-intervenor Marsuda–Rodgers Intern.

Bryan, Cave, McPheeters & McRoberts, Peter D. Ehrenhaft, Johanna M. Klema and Lizbeth R. Levinson, Washington, D.C., for defendant-intervenor Magyar Gordulocsapagy Muvek.

OPINION

TSOUCALAS, Judge.

Plaintiff, The Timken Company ("Timken"), moves pursuant to Rule 56.1 of the Rules of this Court for judgment upon the agency record to contest the determination of the International Trade Administration of the United States Department of Commerce ("Commerce" or "ITA") in *Final Results of Antidumping Duty Administrative Review: Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the Republic of Hungary,* 55 Fed.Reg. 21,066 (1990).

### Background

On June 19, 1987, it was affirmatively determined by Commerce that tapered roller bearings from Hungary were being sold at less than fair value and dumped in the United States. *Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From the Hungarian People's Republic (Hungary); Antidumping Duty Order,* 52 Fed.Reg. 23,319 (1987).

This review covers the period between February 6, 1987 through May 31, 1988. The facts of this case were stated in detail in *The Timken Company v. United States,* 16 CIT ——, 788 F.Supp. 1216 (1992). Briefly, in its investigation, since Hungary is a non-market economy country, Commerce utilized the factors of production methodology to determine foreign market value pursuant to 19 U.S.C. § 1677b (1988). Accordingly, Portugal was selected as the surrogate country for purposes of valuing the factors of production.

Commerce derived the value for Hungarian factors of production from data representing costs in Portugal, the selected surrogate. Plaintiff contests Commerce's methodology in valuing three distinct factors of production: specifically, overhead, direct labor and indirect labor.

■ Plaintiff contests, among other things, the market economy value used by the ITA in calculating assigned overhead. More precisely, plaintiff asserts that Commerce's reliance on an overhead rate (as a percentage of total manufacturing costs) of 24.3%, which was estimated with reference to the annual report of Rol Rolamentos, a Portuguese bearing producer, instead of the 30% rate stated in the February 8, 1990 telex from the U.S. Embassy in Lisbon, was unreasonable. *Motion of Plaintiff, The Timken Company, for Judgment Upon the Agency Record and Memorandum of Points and Authorities in Support* at 7–9.

Plaintiff also contests the ITA's determination of labor rates in their calculation of foreign market value. Plaintiff claims that Commerce assigned to all labor hours reported a *single,* undifferentiated Portuguese rate published by the U.S. Bureau of Labor Statistics ("BLS"), when they should have broken down the labor rates according to the level of skill. *Id.* at 15.

The Court adheres to its opinion in *Timken,* 16 CIT ——, 788 F.Supp. 1216, and finds that Commerce's selection of overhead and direct labor rates was reasonable and supported by substantial evidence as it selected the best information available. *See* 19 U.S.C. § 1677e(c) (1988); *Tehnoimportexport v. United States,* 15 CIT ——, ——, 766 F.Supp. 1169, 1176 (1991); *see also N.A.R., S.p.A. v. United States,* 14 CIT ——, ——, 741 F.Supp. 936, 941 (1990).

■ Furthermore, plaintiff contests the ITA's valuation of indirect labor rates. Timken claims that Commerce failed to take account of the indirect labor factor in its calculations. The ITA, however, reasonably concluded that indirect labor costs were included in Rol Rolamentos' "miscellaneous production expenses" in its factory overhead calculations. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Administrative Record* at 21–23. Furthermore, Timken has offered no evidence to the contrary.

Commerce's determination will not be overturned unless the evidence introduced by plaintiff is "enough to convince the Court that a reasonable mind would not have found ITA's evidence sufficient to support its conclusion." *Tehnoimportexport,* 15 CIT ——, ——, 766 F.Supp. 1169, 1173 (1991) (*quoting The Torrington Co. v. United States,* 14 CIT ——, ——, 745 F.Supp. 718, 723 (1990)). Therefore, in the absence of any contradictory evidence, Commerce acted reasonably in concluding that indirect labor was included in the Rol Rolamentos financial statement.

### Conclusion

The Court holds that the ITA's calculation of foreign market value of merchandise, especially with regard to overhead and labor rates, was supported by substantial evidence and was otherwise in accordance with law.

Accordingly, the determination of the International Trade Administration is affirmed in all respects.